**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRIAN MIKKELSON,

Movant,

v. Case No. 8:26-cv-2160-WFJ-AAS
Crim. Case No. 8:21-cr-218-WFJ-AAS

UNITED STATES OF AMERICA,

Respondent.
_____________________________________/

**ORDER**

Brian Mikkelson is a federal prisoner serving a 192-month sentence for two counts of assault in aid of racketeering activity. He moves *pro se* to vacate his convictions under 28 U.S.C. § 2255. (Civ. Doc. 1). The United States responded to the motion. (Civ. Doc. 4). Although afforded the opportunity, Mr. Mikkelson did not file a reply. After careful review, the motion is **DENIED**.

Mr. Mikkelson was a member of the Unforgiven, "a violent, white-supremacist organization." (Crim. Doc. 1278 at 2). In July 2020, Mr. Mikkelson and other members of the Unforgiven attacked W.H., a member "perceived to have violated group rules." (*Id.* at 3-4). Mr. Mikkelson "struck W.H. in the head with brass knuckles" while other members "held W.H. down and covered his [Unforgiven] tattoo with a tattoo gun." (*Id.* at 5). In October 2020, Mr. Mikkelson and other members of the Unforgiven attacked fellow member P.K. "because of his contact with law enforcement and his drug use." (*Id.*) During

the assault, Mr. Mikkelson "threatened to stab P.K., who sustained multiple deep cuts on his neck." (*Id.*) Mr. Mikkelson fled on a motorcycle after participating in the assault, "but law enforcement captured him in nearby woods after a pursuit." (*Id.* at 4). He was found with a "backpack containing a blow torch, shackles, and rope." (*Id.*)

In January 2024, Mr. Mikkelson pled guilty without a plea agreement to two counts of assault in aid of racketeering activity. (Crim. Doc. 923). With an offense level of 27 and a criminal history category of VI, Mr. Mikkelson faced a guidelines range of 130 to 162 months' imprisonment. (Crim. Doc. 1278 at 7). The Court sentenced Mr. Mikkelson to two concurrent terms of 192 months' imprisonment, explaining that an upward variance was warranted because the offense conduct involved "unusually cruel, gratuitous, terroristic violence." (Crim. Doc. 1216 at 31). The Eleventh Circuit affirmed the convictions. (Crim. Doc. 1278).

Mr. Mikkelson now seeks relief under § 2255, raising three claims of ineffective assistance of trial counsel. (Civ. Docs. 1, 2). For the reasons explained below, each claim lacks merit.

First, Mr. Mikkelson contends that trial counsel should have objected to the two criminal-history points he received for his prior Florida conviction for fleeing or eluding law enforcement. (Civ. Doc. 2 at 8-9). This conviction arose from Mr. Mikkelson's flight from police after the October 2020 assault on P.K. (Crim. Doc. 1092 at 26-27). According to Mr. Mikkelson, he should not have received two criminal-history points for this offense because it "was the very same offense for which for which he was being prosecuted in this federal case." (Civ. Doc. 2 at 9). This argument fails because a "competent" attorney could

have concluded that the objection lacked merit. *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

The guidelines require the addition of two criminal-history points for "each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1(b). If the conduct underlying a prior conviction qualifies as "relevant conduct" under U.S.S.G. § 1B1.3, it cannot be considered a "prior sentence" for the purpose of calculating a defendant's criminal-history score. U.S.S.G. § 4A1.2 cmt. n.1. Section 1B1.3 defines "relevant conduct" as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction or . . . in the course of attempting to avoid detection or responsibility for" the offense of conviction. However, "[w]here a district court [does] not take into account other offense conduct in determining the instant offense level, . . . that conduct does not qualify as 'relevant conduct' under § 1B1.3." *United States v. Chambers*, 805 F. App'x 978, 980 (11th Cir. 2020). In other words, where the prior "state offenses" do not "affect [the] offense level" for the federal charge, the conduct underlying the state offenses is "not 'relevant conduct' under . . . § 1B1.3." *Willis v. United States*, No. 5:19-cr-17-JDW-PRL, 2021 WL 1628003, at *5 (M.D. Fla. Apr. 27, 2021); *see also United States v. Richardson*, 136 F.4th 1261, 1267 (10th Cir. 2025) ("[Section] 1B1.3 relevant conduct includes only acts and omissions that affect the offense level under Chapters Two and Three of the sentencing guidelines.").

Here, Mr. Mikkelson's flight from law enforcement—the basis for his prior fleeing-or-eluding conviction—played no part in calculating the offense level for the assault on

W.H. or P.K.[1] (Crim. Doc. 1092 at 17-20). Therefore, a competent attorney could have concluded that the fleeing-or-eluding conviction counted toward Mr. Mikkelson's criminal-history score. Counsel did not act outside "the wide range of competence demanded of attorneys in criminal cases" by forgoing an objection reasonably considered to be without merit. *Diaz v. United States*, 799 F. App'x 685, 688 (11th Cir. 2020).

Second, Mr. Mikkelson contends that counsel should have objected to the addition of one criminal-history point for allegedly being on probation while he committed the assault offenses. (Civ. Doc. 2 at 7-8). As the government concedes, this status point was incorrectly assessed because Mr. Mikkelson was not on probation when the offenses occurred in July and October 2020. (Doc. 4 at 15-16). The presentence report ("PSR") notes that Mr. Mikkelson's "probation term began on September 23, 2021, and was not revoked until December 14, 2022." (Crim. Doc. 1092 at 28). Because he was not on probation in July or October 2020, Mr. Mikkelson should not have received a status point for "committ[ing] the instant offense[s] while under any criminal justice sentence." U.S.S.G. § 4A1.1(e).

Nevertheless, Mr. Mikkelson is not entitled to relief because he cannot show prejudice. To prevail on his ineffective-assistance claim, Mr. Mikkelson must establish "a reasonable probability that his sentence would have been different if counsel had objected to" the erroneously imposed status point. *Buckner v. United States*, 160 F.4th 1209, 1212

[1] For example, with respect to the assault on P.K., the Court added 12 levels to the base offense level of 14 because the assault "involved more than minimal planning," a dangerous weapon "was otherwise used," and P.K.'s injuries fell between "serious bodily injury" and "permanent or life-threatening bodily injury." (Crim. Doc. 1092 at 18-19). Mr. Mikkelson's flight from law enforcement did not affect the offense level. (*Id.*)

(11th Cir. 2025). As noted above, Mr. Mikkelson's criminal-history category was VI, which applies to offenders with 13 or more criminal-history points. (Crim. Doc. 1216 at 16; *see also* U.S.S.G. Ch. 5, Pt. A (Sentencing Table)). The additional status point increased Mr. Mikkelson's criminal-history score from 14 to 15. (Crim. Doc. 1092 at 28). Thus, even if the objection had succeeded, Mr. Mikkelson would have remained a category VI offender, with the same guidelines range of 130 to 162 months' imprisonment.

Courts "consistently" find "a lack of reasonable probability of prejudice when the calculation errors did not affect the [g]uidelines range and the record did not otherwise suggest that the defendant would have obtained a lower sentence." *United States v. Jurl*, No. 23-1010, 2024 WL 4512530, at *4 (6th Cir. Oct. 17, 2024) (collecting cases). As just noted, the erroneous addition of the status point did not affect the guidelines range. Moreover, there is no indication that, had the error been corrected, Mr. Mikkelson would have received a lower sentence. Thus, Mr. Mikkelson fails to establish *Strickland* prejudice. *See Kizziah v. United States*, No. 7:23-cv-8026-ACA, 2024 WL 3858504, at *7 (N.D. Ala. Aug. 16, 2024) ("[C]ounsel's failure to object does not constitute ineffective assistance because reducing [defendant's] criminal history points by one point results in a criminal history score of ten, which remains within criminal history category V. As such, [defendant] cannot establish prejudice based on counsel's failure to object because his advisory guidelines range would have remained the same."), *aff'd*, No. 24-13222, 2026 WL 1429381 (11th Cir. May 21, 2026).

Lastly, Mr. Mikkelson contends that counsel failed to adequately object to the six-level enhancement for W.H.'s bodily injury under U.S.S.G. § 2A2.2(b)(3)(E). (Civ. Doc.

2 at 9-11). Section 2A2.2(b)(3)(E) requires a six-level enhancement when an assault produces an injury falling between "serious bodily injury" and "permanent or life-threatening bodily injury."[2] Citing this provision, the PSR included a six-level enhancement for the assault on W.H. because his "eyes [were] swollen shut for a few days, [he had] lacerations on his face, a missing tooth, and potential broken ribs," and there was "visible scaring on the back of his neck" "because of the tattooing." (Crim. Doc. 1075 at 18). In his sentencing memorandum, counsel objected to the six-level enhancement because "[t]here [was] a lack of evidence that W.H. had protracted impairment of [a] bodily member, organ, or mental faculty as result of the injury." (Crim. Doc. 1081 at 3). Instead, counsel argued that a three-level enhancement for mere "bodily injury" was appropriate. (*Id.*)

Counsel renewed the objection to the six-level enhancement at sentencing, arguing that "there [was] no evidence of protracted impairment of a function of a bodily member, organ, or mental faculty." (Crim. Doc. 1216 at 7). When the Court asked about the "missing tooth," the prosecutor explained that the PSR had mistakenly included that information, and that it "was a different victim who [was] missing a tooth." (*Id.* at 8-10). The prosecutor nonetheless defended the six-level enhancement on the ground that the back of W.H.'s neck was "disfigured" due to the forced tattooing. (*Id.* at 12-13). In the prosecutor's view,

---

[2] "Permanent or life-threatening bodily injury" means "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. n.1(J). "Serious bodily injury" means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L).

this qualified as "an obvious disfigurement that [was] likely to be permanent." (*Id.* at 12). The Court removed from the PSR the references to the missing tooth. (*Id.* at 15). It then overruled counsel's objection to the six-level enhancement "for [the] reasons stated by the government just now." (*Id.*)

Mr. Mikkelson argues that, once the Court struck the references to the missing tooth, counsel should have asked "how the six-level enhancement could be maintained" when W.H. had not "los[t] [the] function of a bodily member." (Civ. Doc. 2 at 10). But counsel had already raised this objection. Both in the sentencing memorandum and at the sentencing hearing, counsel maintained that the six-level enhancement was unwarranted because "[t]here [was] a lack of evidence that W.H. had protracted impairment of [a] bodily member, organ, or mental faculty as result of the injury." (Crim. Doc. 1081 at 3; *see also* Crim. Doc. 1216 at 7). The Court considered this objection and overruled it based on the disfigurement of W.H.'s neck from the forced tattooing. (Crim. Doc. 1216 at 12-15). Counsel was not deficient for failing to repeat an objection he had already raised. *See Romero-Alarcon v. United States*, No. 3:04-cr-8, 2009 WL 3258844, at *5 (W.D.N.C. Oct. 7, 2009) ("While counsel did not specifically 'renew' this objection at the start of the continued sentencing hearing on July 26, 2006, it was not necessary that he do so, since he had already stated his objection during the first portion of his sentencing hearing on May 15, 2006.").

Regardless, the Court's ruling did not depend on finding that W.H. suffered from a loss of bodily function. Under the guidelines, a "permanent or life-threatening bodily injury" can include "an obvious disfigurement that is likely to be permanent." U.S.S.G. §

1B1.1 cmt. n.1(J). That language fairly encompasses the scars on W.H.'s neck from the forced tattooing. *See United States v. Bruce*, 256 F. App'x 520, 523 (3d Cir. 2007) (upholding six-level enhancement for permanent or life-threatening bodily injury based on victim's "branding scars").

Accordingly, the Court **ORDERS**:

1. Mr. Mikkelson's motion to vacate under § 2255 (Civ. Doc. 1) is **DENIED**.
2. The **CLERK** is directed to enter judgment against Mr. Mikkelson, to **CLOSE** this case, and to enter a copy of this order in the criminal case.
3. Because Mr. Mikkelson neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, on November 20, 2026.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**